UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARTIN RANDY ROGERS,  )
      Plaintiff,  )
        )
v.  )   No. 3:10-CV-314
  )   (Phillips/Shirley)
MICHAEL J. ASTRUE,  )
Commissioner of Social Security,  )
      Defendant.  )

## MEMORANDUM OPINION

I.    Introduction

This social security appeal is before the court for consideration of the Plaintiff's Objection (Doc. 14) to the Report and Recommendation filed by United States Magistrate Judge C. Clifford Shirley (Doc. 13). Magistrate Judge Shirley found that the Defendant Commissioner's decision that the Plaintiff is not disabled is supported by substantial evidence in the record. He recommended that the Plaintiff's Motion for Summary Judgment (Doc. 7) be denied and that the Commissioner's Motion for Summary Judgment (Doc. 11) be granted.

II.    Statement of the Case

On December 13, 2007, Plaintiff filed an application for disability insurance benefits, alleging disability beginning October 31, 2006. (Tr. 92-93.) The claim was denied by the administrative law judge ("ALJ") on August 25, 2009. (Tr. 11-19.) The ALJ's denial

included findings that the Plaintiff was not disabled and had the residual functional capacity ("RFC") to perform a limited range of medium work. (Tr. 13-19.) The Appeals Council denied the plaintiff's request for review. (Tr. 1-5.) Plaintiff sought judicial review of the Commissioner's decision in this court pursuant to C.F.R. § 404.981.

Both parties have moved for summary judgment (Docs. 7, 11). On July 25, 2011, the magistrate judge issued a Report and Recommendation (Doc. 13), to which the Plaintiff promptly filed an objection (Doc. 14). As required by 28 U.S.C. § 36(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, this court has undertaken a *de novo* review of those portions of the Report and Recommendation to which plaintiff objects.

## III. Issues Presented

Plaintiff argues that the ALJ's disability and RFC determinations were not supported by substantial evidence. (Doc. 14.) Specifically, Plaintiff contends that the ALJ failed to properly consider all of Plaintiff's mental limitations (Doc. 14, at 2-4) and neglected to request clarification of some of the Plaintiff's illegible medical records (Doc. 14, at 1-2).

## IV. Analysis

The court finds that the ALJ examined and accorded substantial weight to the Plaintiff's medical records, successfully recontacted Plaintiff's treating physician regarding the illegible records, and had sufficient grounds on which to base its findings regarding the Plaintiff's disability and residual functional capacity. Plaintiff's objections to the magistrate judge's report and recommendation will be overruled.

**A. The ALJ examined and gave sufficient credence to all medical opinions on record in making its ultimate determination concerning Plaintiff's mental impairments and residual functional capacity.**

In arriving at its conclusions concerning the Plaintiff's mental impairments and RFC, the ALJ considered the records of Dr. Eric D. Moffett, Pamela Branton, Brad Williams, and Dr. Horace F. Edwards. The Plaintiff objects to the fact that the ALJ "failed to include [in its final decision] all of the noted limitations" from the medical reports, but the court finds that the ALJ described in sufficient detail each doctor's findings and afforded significant weight to all of the medical opinions.

The ALJ must analyze every medical opinion received and determine the weight to give such opinions in making a disability determination. 20 C.F.R. § 404.1527(d) (West 2010). The Sixth Circuit has held that, in its final decision, "the ALJ is not required to discuss every piece of medical opinion evidence." Karger v. Comm'r of Soc. Sec., 414 Fed. App'x 739, 753 (6th Cir. 2011). Rather, the ALJ must discuss "enough of that evidence to enable [a reviewing court] to determine whether substantial evidence supports the [ALJ's] determination . . . ." Id. The weight to be given any physician's opinion depends on the extent to which it is supported by medical data and other evidence of record. 20 C.F.R. § 404.1527(d)(3).

In compliance with these requirements, the ALJ examined, described, and accorded relative weight to each medical report on the record. The ALJ described Dr. Eric Moffett's findings that supported and were contrary to the ALJ's final determination. Compare (Tr. 16 ("[C]laimant's memory and concentration were severely impaired; . . . He had a flat affect and depressed mood; . . . .")), with (Tr. 16 ("[H]is thinking, psychomotor

-3-

activity was normal. . . . [H]e denied hallucinations and delusions; he had adequate interactions with others and there was no mental retardation present.")). The ALJ also explained the weight accorded to Dr. Moffett's records: "The undersigned has taken into consideration the opinion of Dr. Moffett . . . . [T]he undersigned gives significant weight to the opinion of Dr. Moffett because it is consistent with the medical report as a whole and the residual functional capacity determined in this decision." (Tr. 17.)

The ALJ also took into account a psychological examination performed by Pamela Branton, M.S. He acknowledged the mental health treatment the Plaintiff had received in the past, and relied heavily upon the fact that the Plaintiff had not relapsed into depression or exhibited suicidal behavior since 2003. (Tr. 15.) Branton's recommendation that the Plaintiff "might have difficulty remembering more than simple to moderately detailed instructions" likely formed the basis of the ALJ's ultimate conclusion that the Plaintiff was suited only for "simple, routine, repetitive jobs." (Tr. 15.)

Finally, the ALJ considered reports made by Brad Williams and Dr. Horace F. Edwards, reviewing state agency psychologists, concerning the Plaintiff's residual functional capacity. Like with his summary of Dr. Moffatt's reports, the ALJ cited portions of the reports that were both favorable and contrary to his conclusion:

> [T]he claimant could understand and carry out simple tasks to lower level detailed tasks while getting along with others and adapting that level of function. He would not be able to perform more complicated tasks nor deal with the public, except in simple situations, due to his mood disorder.

(Tr. 17.) The ALJ described its degree of reliance on the psychologists' reports: "The opinions of the State Agency reviewing psychologists . . . have also been considered and given great weight be the undersigned." Id.

-4-

The Plaintiff contends that the ALJ erred in according heavier weight to Dr. Edwards's Functional Capacity Assessment than to his checklist assessment of the Plaintiff's attributes. (Doc. 14, at 3.) However, this court concurs with the ALJ's preference. (Doc. 12, at 12 ("On that [Functional Capacity] assessment, instead of simply checking off boxes, Dr. Edwards could explain his findings in a narrative form.") The ALJ's final decision relied heavily upon the Functional Capacity Assessment portion of Dr. Edward's report (Tr. 15, 17), and the ALJ did not err in failing to mention in his final decision every single finding from the checklist portion of Dr. Edwards's report. See Karger, 414 Fed. App'x at 753.

### B. The state disability agency took sufficient steps to recontact and obtain additional information from the Plaintiff's treating psychiatrist.

Some of the Plaintiff's strongest objections concern the ALJ's treatment of the medical records of Eric D. Moffett, M.D., the Plaintiff's treating psychiatrist from February 2003 through June 2008. Dr. Moffett initially produced physician and treatment notes, lab reports, and diagnostic check-sheets for the Plaintiff. Because some of Dr. Moffett's handwritten notes were illegible, the state disability agency contacted Dr. Moffett in June 2008 and asked him to complete a supplemental evaluation about the Plaintiff's condition (Tr. 437-38). Dr. Moffett submitted this supplemental evaluation.

"For treating sources, the rules also require that the agency make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." Soc. Sec. R. 96-5p, 1996 WL 374183, at *2 (July 2, 1996). The Social Security Administration details how to satisfy this "recontacting" requirement for medical record

ambiguities: "We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity . . . . We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including or treating source, or by telephoning your medical source." 20 C.F.R. § 404.1512(e)(1).

The court notes that significant portions of Dr. Moffett's notes were not illegible. (Tr. 243-45, 247-49, 251-52, 254-55, 267-82, 353, 356, 358-61, 363-65.) Additionally, Plaintiff cites no case law indicating that the Agency's act of contacting Dr. Moffett in June of 2008 and obtaining his supplemental evaluation (Tr. 437-38) does not satisfy the "recontacting" requirement of 20 C.F.R. § 404.1512. The court agrees with the magistrate judge that the agency's recontacting Dr. Moffett was sufficient record development. The court also finds that the ALJ discussed Dr. Moffett's opinion in sufficient detail and accorded significant weight to his opinion in making the ultimate determination regarding the Plaintiff's residual functional capacity. See supra Part IV.A.

C. **There is substantial evidence in the record supporting the ALJ's finding that the Plaintiff was not disabled and retained the capacity for medium exertion work.**

The record contained substantial evidence supporting the ALJ's decision to deny the Plaintiff's application for disability benefits. The Plaintiff's own testimony revealed that he had not had a depressive episode since 2003 (Tr. 29, 286), well before the alleged disability onset date, and that he had not experienced any lapses in almost a decade (Tr. 29). The Plaintiff's testimony regarding the significant improvements in his condition while
-6-

Case 3:10-cv-00314   Document 15   Filed 09/26/11   Page 6 of 8   PageID #: 80


taking psychotropic medications also indicate lack of a disability. Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) ("The medical evidence reflected that appellant's impairments were controlled with medication and were not seriously disabling."). With regard to his physical abilities, the Plaintiff claimed only that he was not as strong as he once was (Tr. 35), but acknowledged that he performed his own yard work, maintains his household, cleans the home, does laundry, and cooks. (Tr. 36.)

The medical opinions also support the ALJ's conclusion. Dr. Moffett indicated that the Plaintiff had an adequate ability to interact with others, had no mental retardation, and had normal thinking and psychomotor abilities. (Tr. 16, 243-45, 247-49. 251-52, 254-55.) Pamela Branton opined that the Plaintiff probably could understand moderately detailed or complex instructions and had only a "mildly impaired" ability to understand directions. (Tr. 288.) And the state agency reviewers determined that the Plaintiff could understand, remember, and carry out simple to lower level detailed tasks; get along with others and adapt the lower level functions; sustain attention and concentration; accept criticism from supervisors with only occasional difficulty; keep a schedule, maintain attendance, and complete a workweek; and set realistic goals without significant emotional difficulty (Tr. 311, 409).

Finally, the ALJ did not fail to acknowledge the evidence in the record that conflicted with his decision. The ALJ heard the Plaintiff testify regarding his "severe" mental impairments of depression and anxiety (Tr. 13), past treatments and prescription medications for mental instability (Tr. 27-28, 30), and his tendencies to be forgetful and to get distracted (Tr. 32, 36.). As discussed supra in Part IV.A, the ALJ also recognized the

medical opinions' conclusions that the Plaintiff had difficulty with memory, concentration, complex instructions, and social interactions. The court finds that the ALJ incorporated these limitations into its final decision, in which it held that the Plaintiff was "limited to simple, routine, repetitive jobs that involved no interaction with the general public, minimal social interaction, and an avoidance of hazards." (Tr. 15).

## V.    Conclusion

The ALJ examined and accorded the requisite weight to the Plaintiff's medical records, successfully recontacted Plaintiff's treating physician regarding the illegible records, and had sufficient grounds on which to base its disability and residual functional capacity determinations. Finding no error in the magistrate judge's report and recommendation (Doc. 13), the court will overrule Plaintiff's objections (Doc. 14); deny Plaintiff's Motion for Summary Judgment (Doc. 7); grant defendant Commissioner's Motion for Summary Judgment (Doc. 11); affirm the Commissioner's denial of Plaintiff's application for benefits under the Social Security Act; and dismiss this case.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge